**TRANSITIONAL HOSPITALS CORPORATION OF LOUISIANA, INC., and Transitional Hospitals Corporation of Texas, Inc., Plaintiffs,**

v.

**Donna E. SHALALA, Secretary of the United States Department of Health and Human Services, Defendant.**

**No. Civ.A. 97–01351(HHK).**

United States District Court, District of Columbia.

March 25, 1999.

Eugene Tillman, Joseph W. Metro, Pamela K. Riley, Reed Smith Shaw & McClay, L.L.P., Washington, D.C., for plaintiff.

James' Philip Ellison, United States Department of Health & Human Services, Office of General Counsel, IG Division, Scott S. Harris, Assistant United States Attorney for the District of Columbia, Office of the United States Attorney for the District of Columbia, Washington, D.C., Washington, D.C., for defendant.

## ORDER AND JUDGMENT

KENNEDY, District Judge.

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 25th day of March, 1999 hereby

**ORDERED AND ADJUDGED** that judgment is entered in favor of the plaintiffs; and it is further

**ORDERED AND ADJUDGED** that the defendant's regulations at 42 C.F.R. §§ 412.22(d) and 412.23(e) are declared to be invalid to the extent that they preclude newly participating long-term care hospitals from securing an exemption from the Medicare Prospective Payment System for inpatient hospital services pursuant to 42 U.S.C. § 1395ww(d)(1)(B)(iv)(I); and it is further

**ORDERED AND ADJUDGED** that within 30 days of the date of this order, that the defendant shall cause its fiscal intermediaries to reimburse the plaintiffs on the basis of their reasonable costs of providing inpatient hospital services for their 1993 fiscal years; and it is further

**ORDERED AND ADJUDGED** that the defendant pay to the plaintiffs the interest on the contested amount, pursuant to 42 U.S.C. § 1395oo(f)(2), and pay to the plaintiffs their costs and reasonable attorney's fees herein.

## MEMORANDUM

The federal legislation that established Medicare requires the Secretary of the United States Department of Health and Human Services to exempt any hospital in which patients have an average length of stay greater than 25 days ("long-term care hospitals") from the Medicare Prospective Payment System ("PPS" or "Prospective Payment System"). 42 U.S.C. § 1395ww(d)(1)(B)(iv). The plaintiffs, Transitional Hospitals Corporation of Louisiana, Inc., and Transitional Hospitals Corporation of Texas, Inc., operate two long-term care hospitals that furnish acute care services. They contend that the Secretary's regulations which implement the exemption from PPS for long-term care hospitals, 42 C.F.R. §§ 412.22(d), 412.23(e), are unlawful because they do not allow long-term care hospitals to be reimbursed in accordance with the mandate of the Medicare statute.

Before the court are the parties' cross motions for summary judgment. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that the plaintiffs' motion for summary judgment must be granted. The regulations at issue in this case are invalid because they do not conform to Medicare's payment scheme for long-term care hospitals, the precise issue Congress addressed when it exempted long-term care hospitals from the Prospective Payment System. Moreover, even were it determined that Congress has not addressed the precise question at issue, the Secretary's regulations are not the product of a reasonable interpretation of the legislation they purport to implement.

### I. BACKGROUND

The Medicare Program is a federal health insurance program that pays for medical care for people 65 years or older, certain younger disabled people, and peo-

ple with kidney failure. 42 U.S.C. § 1395 et seq. Medicare insurance coverage is divided into two parts, Part A and Part B. Part A provides coverage for care in health care institutions, Part B provides coverage for physicians' services and other services. Only Part A of the Medicare Program is at issue in this case.

The Secretary of Health and Human Services is responsible for administering the Medicare Program. However, part of the administration of the Medicare Program has been delegated to the Health Care Financing Administration (HCFA) and to "fiscal intermediaries," which generally are private insurance companies. 42 U.S.C. § 1395h.

When the Medicare Program was first established, hospitals were reimbursed for the "reasonable costs" of providing services, subject to certain limits. 42 U.S.C. §§ 1395f(b)(1), 1395x(v) (1982). In 1983, in an effort to contain the increasing costs of the health care system, Congress enacted a new reimbursement system, the Prospective Payment System. Pub.L. No. 98–21 (1983) (codified at 42 U.S.C. § 1395ww(d)). Under the Prospective Payment System, hospitals are paid a predetermined rate, which is based upon the "diagnostic related group" classification of the patient's illness at the time of admission. Certain types of hospitals were excluded from the Prospective Payment System, however. 42 U.S.C. §§ 1395ww(d)(1)(B)(i)–(v). Congress provided that these hospitals would continue to be paid based upon the "reasonable costs" of services provided. 42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A).

The Medicare statute sets out which hospitals will be exempt from the Prospective Payment System as follows:

As used in this section, the term 'subsection (d) hospital' means a hospital located in one of the fifty States or the District of Columbia other than—

(i) a psychiatric hospital (as defined in section 1395x(f) of this title),

(ii) a rehabilitation hospital (as defined by the Secretary),

(iii) a hospital whose inpatients are predominantly individuals under 18 years of age,

**(iv)(I) a hospital which has an average inpatient length of stay (as determined by the secretary) of greater than 25 days,** or

(II) a hospital that first received payment under this subsection in 1986 which has an average length of stay (as determined by the Secretary) of greater than 20 days . . . or

(v)(I) a hospital that the Secretary has classified, at any time on or before December 31, 1990 . . . as a hospital involved extensively in treatment for or research on cancer. . . .

42 U.S.C. § 1395ww(d)(1)(B) (emphasis supplied). Thus, under this provision a long-term care hospital is exempted from the Prospective Payment System.

Pursuant to statute, HCFA promulgated regulations that implement § 1395ww(d)(1)(B). HCFA regulations require a long-term care hospital that seeks to be excluded from the Prospective Payment System to demonstrate that it has an average inpatient length of stay greater than 25 days by using data accumulated over a six month period. 42 C.F.R. § 412.23(e)(1).[1] Once a long-term care hospital qualifies as a PPS-exempt hospital, the regulations indicate that the reimbursement of the hospital in accordance

1. The regulation provides that the average inpatient length of stay is to be calculated in the following manner:

(i) By dividing the number of total inpatient days (less leave or pass days) by the number of total discharges for the hospitals most recent complete cost reporting period;

(ii) If a change in the hospital's average length-of-stay is indicated, by the same method for the immediately preceding 6–month period; or

(iii) If a hospital has undergone a change of ownership . . . the hospital may be excluded from the prospective payment system . . .

42 C.F.R. § 412.23(e)(3).

with the exemption will only begin in the hospital's next full cost reporting period. 42 C.F.R. § 412.22(d).[2] Thus, if a long-term care hospital qualifies for a PPS exemption, the payments made to it under the Prospective Payment System during the six month data accumulation period are not adjusted retroactively to account for the higher payments it would have received had it been exempted from PPS during that period.

The plaintiffs' two hospitals opened in November and December of 1992. Compl. ¶¶ 16, 17. The hospitals requested HCFA to exempt them from PPS as of their initial start dates because they expected to admit patients with medically complex diagnoses that would require extended hospital stays. Compl. ¶ 18. HCFA refused to grant the request and also indicated that the hospitals would not be able to recoup retroactively the difference between payments under the PPS and PPS-exempt systems, even if HCFA were later to determine that the hospitals had an average length of stay of greater than 25 days during the initial period that would determine their eligibility. Compl. ¶ 19, Letter from Kathleen A. Buto to Eugene Tillman (Dec. 12, 1992) ("Buto Letter"), A.R. at 66–68.

The parties agree that the average length of stay for the two hospitals exceeded 25 days during the hospitals first cost reporting period.[3] Based on that data, the Secretary exempted the two hospitals from the Prospective Payment System for the next fiscal year. Compl. ¶ 26. However,

the fiscal intermediaries determined that the two hospitals would not be reimbursed at the PPS exempt rate during their first cost reporting period. Compl. ¶ 23.[4]

The plaintiffs contested the determination of the fiscal intermediaries by requesting a group hearing before the Provider Reimbursement Review Board, pursuant to 42 U.S.C. § 1395oo. On April 24, 1997, the board determined that it was without authority to determine the legal question at issue. This suit followed.

## II. ANALYSIS

### A. Standard of Review

Under Fed.R.Civ.P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. The parties do not dispute that the plaintiffs' hospitals had an average length of stay greater than 25 days for their first cost reporting period. Thus, the dispositive issue in this case is a purely legal one: whether the applicable regulations operate to contravene the statutory criteria for granting exclusions from the Prospective Payment System.

■ The Secretary's determinations regarding Medicare reimbursement actions are subject to the requirements of the Administrative Procedure Act (APA), 5

---

2. In pertinent part, 42 C.F.R. § 412.22(d) provides as follows:

    *Changes in hospitals' status.* For purposes of exclusion from the prospective payment systems ... the status of each currently participating hospital (excluded or not excluded) is determined at the beginning of each cost reporting period and is effective for the entire cost reporting period. Any changes in the status of the hospital are made only at the start of a cost reporting period.

3. The average length of stay for the first cost reporting period was 38.07 days for THC–

Arlington and 46.68 days for THC–New Orleans. Compl. ¶ 21,22.

4. The plaintiffs assert that the difference between the reimbursement they received under the Medicare Prospective Payment System and the reimbursement they would have received if they had been exempt from the PPS system amounted to $1,298,998 for THC–Arlington during its first cost reporting period (FY 1993) and $1,227,448 for THC–New Orleans during its first cost reporting period (FY 1993). Compl. ¶¶ 24,25.

U.S.C. § 701 et seq. See 42 U.S.C. § 1395oo(f). Under the APA, a court must set aside agency rules which are: arbitrary, capricious, an abuse or discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2).

■ The applicable methodology for reviewing whether an agency's regulation is a lawful interpretation of the authorizing statute is articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron*, the court first determines whether Congress has "directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. "If it is unclear how Congress would have resolved this issue, then the court must consider whether the regulations are a 'permissible construction' of the statute." *Id.* at 842–43, 104 S.Ct. 2778.

**B. *Chevron* Step One**

Following the methodology of *Chevron*, the court must first determine if Congress has "directly spoken to the precise question at issue." *Chevron, supra* at 842, 104 S.Ct. 2778. As the Court explained in *Chevron*, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843, n. 9, 104 S.Ct. 2778. "Traditional tools of statutory construction" are to be employed by a court in order to determine whether Congress has spoken to the precise question at issue. *Id.* See also *Regions Hospital v. Shalala*, 522 U.S. 448, 118 S.Ct. 909, 915, 139 L.Ed.2d 895 (1998); *Methodist Hospital of Sacramento v. Shalala*, 38 F.3d 1225, 1231 (D.C.Cir.1994) (considering Congressional intent as first part of *Chevron* analysis).

■ It is not surprising that often the most important and difficult task for a court in determining whether Congress "has spoken to the precise question at issue" is to discern and articulate the "precise question at issue." Generally, the more narrowly the question at issue is framed, the easier it is to establish that Congress has not addressed that question. For obvious strategic reasons, the Secretary frames the question very narrowly. She asserts that the question at issue is whether the Secretary must exclude a newly opened hospital from the Prospective Payment System for the period in which the hospital gathers data that demonstrates that it has an inpatient length of stay greater than 25 days. This is not an appropriate framing of the question. The question at issue is whether a hospital with an average inpatient length of stay greater than 25 days during a cost reporting period is entitled to an exemption from the Prospective Payment System for that period.

Any interpretation of a statute must begin with the plain language of the statute itself. *Ardestani v. I.N.S.*, 502 U.S. 129, 135, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). The statute establishes that any "hospital which has an average inpatient length of stay (as determined by the Secretary) of greater than 25 days" is a "subsection (d) hospital" for the purposes of the Medicare statute and entitled to an exemption from the Prospective Payment System. 42 U.S.C. § 1395(d)(1)(B). Accordingly, the plain language of the statute indicates that a long-term care hospital may obtain an exemption from the Prospective Payment System whenever it "has" an average inpatient length of stay greater than 25 days.

This reading of the statute is confirmed by a comparison with alternative ways that Congress could have expressed its intention. The Secretary argues that if Congress had intended for a hospital to be eligible for reimbursement at the PPS exempt rate for all periods during which its average length of stay was greater than 25 days, Congress would have crafted a statute that would have provided for a PPS

exemption for "a hospital which has an average inpatient length of stay *for every cost reporting period* (as determined by the Secretary) of greater than 25 days." Def.'s Reply Mot. at 6 (emphasis in original). The court disagrees.

To illustrate the wording the Secretary surmises Congress would have used, she simply drafts a more specific version of the statute. In doing so it was not necessary to change the tense of the verb the operative sentence employs in order to keep the same meaning of "has." The Secretary's use of this example is not persuasive because it is always possible to come up with a more specific alternative wording of a statute that Congress could have enacted.

The plaintiffs argue more persuasively that if Congress had intended to grant an exemption only for periods after the average length of stay had been established, it likely would have written the statute to provide a PPS exemption for a hospital that "*had* an average length of stay (as determined by the secretary) of greater than 25 days *during its most recent cost reporting period.*" Pls.' Mot. at 15 (emphasis in original). Considering this possibility highlights the fact that if Congress had intended for the exemption to apply only once the hospitals had established the average length of stay, then it would have been necessary for Congress to change the tense of the verb from the present tense ("has") to the past tense ("had").

The Secretary offers two other arguments based upon the language of the statute in support of her position that Congress has not directly spoken to the question of whether a hospital is entitled to an exemption from PPS for every cost reporting period in which it has an average length of stay greater than 25 days. First, the Secretary asserts that the phrase "as determined by the Secretary" means that Congress intended to give the Secretary discretion as to when an exemption from PPS would become effective for long term care hospitals. Second, she contends that Congress' failure to explicate the point in

time at which the exemption must be granted indicates that the statute is ambiguous as to the timing of the exemption. Both of these arguments are without merit.

### i. The phrase "as determined by the secretary."

The Secretary argues that the significance she attaches to the phrase "as determined by the secretary" is supported by the Ninth Circuit's decision in *San Bernardino Mountains Community Hospital District v. Secretary of HHS,* 63 F.3d 882 (9th Cir.1995). In *San Bernardino,* the court upheld a HHS regulation that established when a hospital qualified as a "sole community hospital," which would result in an exemption from the limits imposed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 42 U.S.C. §§ 1395ww(a)–(b). The plaintiff had contended that the Secretary's regulation inappropriately prevented any hospital not located in a "rural area" (as that term was statutorily defined) to qualify as a "sole community hospital" because the statutory criteria for a "sole community hospital" did not require a hospital to be in a "rural area." *Id.* at 886. The court rejected that argument because the statutory provision included the term "as determined by the secretary." When that term was read in conjunction with the "broad grant of discretionary authority" that was also included in the statute, 42 U.S.C. § 1395ww(a)(2), the court concluded that "Congress intended to delegate to the Secretary the task of outlining and defining the criteria for attaining sole community hospital status." *Id.* at 886–887.

*San Bernardino* is distinguishable for several reasons. First, there is no provision in the Medicare statute similar to § 1395ww(a)(2) that gives the Secretary a "broad grant of discretionary authority" to issue exemptions from PPS. Second, the plaintiffs in this case are not disputing that the Secretary has broad discretion to regulate how a hospital can establish that it has an average length of stay greater than 25

days. Rather, the plaintiffs assert correctly that "*after* determining that a hospital's average length of stay meets the statutory and regulatory requirements [however that determination is made] the Secretary must exclude a hospital from the PPS reimbursement system for the period during which the hospital met the applicable requirements." Pls.' Reply Mot. at 7.

Moreover, as at least one court has recognized, a reference to the "secretary's discretion" in one section of the statute does not mean that the agency can ignore the plain meaning of other statutory provisions. In *County of Los Angeles v. Shalala*, 992 F.Supp. 26 (D.D.C.1998), the court struck down a HHS regulation governing the determination of outlier payments. Outlier payments are a method for hospitals that are paid under the Prospective Payment System to recover additional reimbursement for hospitalizations with unusually long lengths of stay. See 42 C.F.R. § 412.80 et seq. The court applied the first step of *Chevron* and considered whether Congress had directly spoken to the precise issue of whether the Secretary was required to make "retroactive adjustments to outlier payments" where the statute included a provision that the amount of the payments "shall be determined by the secretary." *Id.* at 30–31. The statutory language provided that the outlier payments "may not be less than 5 percent or more than 6 percent of the total payments projected or estimated to be made on DRG prospective payment rates for discharges in that year." *Id.* at 30. The Secretary argued that this language allowed her to "set outlier thresholds at a level *projected* to result in outlier payments in the five to six percent range" *id.* at 30, while the plaintiffs maintained that the outlier payments had to *actually* fall in the 5 to 6 percent range.

The court held that although the statute gave the Secretary discretion to determine the amount of the additional payment, the Secretary was required to make retroactive adjustments to ensure that the pay-

ments would fall into that range. In this case, the court reaches a conclusion that is in line with the court's analysis in *County of Los Angeles*. While the Secretary has discretion to determine how a hospital's average length of stay is calculated, the Medicare statute requires the Secretary to grant an exemption from PPS for every cost reporting period in which the hospital meets the statutory criteria for an exemption.

**ii. Absence of a temporal provision**

The Secretary also asserts that "when a statute does not explicitly address the point in time when an act must take place, Congress has not addressed that precise issue." Def.'s Mot. at 14. The Secretary relies on *Regions Hospital v. Shalala*, 522 U.S. 448, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998). However, as the plaintiffs point out, *Regions* provides scant support for the Secretary's argument. *Regions* cannot be read to establish a general rule that courts may ignore the plain meaning of a statute whenever a statute does not address when an act must take place. In *Regions*, the Supreme Court held that Congress had not addressed the precise issue of whether the term "recognized as reasonable" contained in the Medicare statute prohibited the Secretary from reauditing graduate medical education costs (GME costs) for 1984, which was the base year for determining GME reimbursement in all subsequent years. *Id.* at 916.

The Court concluded that where a provision of § 1395ww was "silent on the matter of time" in contrast to other provisions, the statute was ambiguous as to whether it permitted the Secretary to conduct a reaudit. *Id.* It is important to note that as part of its analysis the Court "looked to the provisions of the whole law, and to its object and policy." *Id.* at 917 n. 5. Accordingly, the Court also looked to the purpose of the Medicare statute in order to determine whether Congress had addressed the precise question at issue. The Court concluded that the purpose of the contested

Amendments was to "limit payments to hospitals for GME costs" and to "reimburse only reasonable costs, and to prevent payment of uncovered, improperly classified, or excessive costs." *Id.* at 917.

Therefore, as was done in *Regions,* this court must consider the purpose of the statutory exclusions from the Prospective Payment System as part of its analysis of whether Congress has addressed when an exemption from PPS is effective. Citing *Methodist Hospital of Sacramento v. Shalala,* 38 F.3d 1225, 1230 (D.C.Cir.1994), as support, the Secretary asserts that granting a retroactive exemption from the Prospective Payment System would interfere with the "prospective" nature of Medicare reimbursements. *Methodist Hospital* does not support the Secretary's position. *Methodist Hospital* held that the Secretary was not required to apply retroactively a corrected wage index that was used to determine the rate of payment **under** the Prospective Payment System. But in this case, the contention of the Secretary to the contrary notwithstanding, the statutory **exclusion** of certain categories of hospitals from PPS reflects Congress's recognition that reimbursement of these hospitals on a prospective basis is not appropriate. For this reason Congress requires that these hospitals be reimbursed on a **non-prospective** basis. See *County of Los Angeles v. Shalala,* 992 F.Supp. 26 (D.D.C.1998) (*Methodist Hospitals* distinguished because retroactive outlier payments would have little effect on the prospective nature of Medicare reimbursement). The Senate Finance Committee Report makes this point explicitly:

> Psychiatric, long-term care, rehabilitation and children's hospitals would be specifically exempted from the prospective payment system. The DRG classification system was developed for short-term acute care general hospitals and, as currently constructed, does not adequately take into account special circumstances of diagnoses requiring long term stays and as used in the Medicare pro-

gram is inappropriate for certain classes of patients.

S.Rep. No. 98–23, at 54 (1983), *reprinted in* 1983 U.S.C.C.A.N. 143, 194.

For the foregoing reasons, this court concludes that Congress has addressed the precise question at issue. A hospital with an average inpatient length of stay greater than 25 days during a cost reporting period is entitled to be reimbursed in accordance with the PPS exemption for that period.

## C. *Chevron* Step Two

Under *Chevron,* when Congress has spoken to the precise question at issue "that is the end of the matter," and it is unnecessary to analyze the regulations further. *Chevron, supra* at 842–843, 104 S.Ct. 2778. Nevertheless, the court addresses briefly, the issue presented at the second step of the *Chevron* analysis: whether the contested regulations are a permissible construction of the Medicare statute. The court concludes that even if the Medicare statute were ambiguous and the court were therefore required to view the regulations with deference, the regulations are not a reasonable interpretation of the Medicare statute. The parties' arguments are centered upon three points.

First, the plaintiffs assert that the Secretary's regulations for the process of obtaining a PPS exemption draw an arbitrary distinction between long-term care hospitals and rehabilitation hospitals, even though the statute provides exemptions for both types of hospitals. The Secretary's regulations enable a rehabilitation hospital to be exempted from PPS during its initial cost reporting period by allowing it to "self-certify" that it intends to serve the types of patients specified. 42 C.F.R. § 412.23(b)(8). Long-term care hospitals are treated differently. They are not allowed to self-certify. See Buto Letter, A.R. 66–68.

The Secretary defends the distinction she has drawn between rehabilitation hos-

pitals and long-term care hospitals by arguing that the features of a rehabilitation hospital do not need to be determined over time. For long-term care hospitals, the Secretary asserts the "average length of stay" can only be determined over time, and therefore self-certification is not feasible. While this argument has some merit, it is troubling that in the past, the Secretary had granted two other long-term care hospitals an exclusion from PPS as of their first day of operation. See Buto Letter, A.R. 68.[5]

In any event, while the Secretary may be justified in refusing to allow a long-term care hospital to self-certify, despite the fact that the policy has been applied inconsistently, this issue does not need to be resolved in order to find that the Secretary's regulations for long-term care hospitals are an unreasonable interpretation of the Medicare statute. Although the plaintiffs did originally request to "self-certify," in this action they do not assert that the Medicare statute requires the Secretary to grant long-term care hospitals an exemption from PPS before their average length of stay can be established. Rather, they assert that the Medicare statute entitles them to an exemption during their first cost reporting period and suggest either self-certification or retroactive reimbursement as a method that could be employed to achieve a payment system consistent with Medicare's payment scheme for long-term hospitals.

Second, the Secretary asserts that she was not required to consider the alterna-

tive of retroactive reimbursement, particularly when the hospitals did not raise this alternative during the notice and comment period. Def.'s Reply Mot. at 20. The Secretary relies on *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), in support of her observation that an agency is not required to consider "every conceivable policy alternative" when interpreting a statute, particularly where the alternative is "wholly outside of the prospective payment system." Def.'s Reply Mot. at 21. Once again, what the Secretary fails to recognize is that the process of granting an exemption from the Prospective Payment System is, in a real sense, a process "wholly outside" the Prospective Payment System. See *County of Los Angeles, supra* at 33 (stating that a retroactive adjustment to outlier payments would not "affect the core of the prospective payment system").[6]

Nor will the court give much weight to the fact that the hospitals never raised the alternative of retroactive readjustment during the notice and comment period. As the Secretary's inconsistent application of her regulations for long-term care hospitals demonstrates, the two hospitals were justified in their failure to contest this aspect of the regulations. Before the Secretary clarified her policy, it was ambiguous whether the regulations allowed a hospital to obtain an exemption as a long-term care hospital for its first cost reporting

---

**5.** The Secretary has stated that those hospitals "had been inappropriately given first day exclusions from the PPS." Buto Letter, A.R. 68. According to the Secretary, the mistakes occurred because staff misunderstood the regulations, and the Secretary has now directed that long-term care hospitals may not obtain "first day exclusions" from the Prospective Payment System. *Id.*

**6.** It is important to note, therefore, that the Secretary's reliance on *Methodist Hospital of Sacramento v. Shalala*, 38 F.3d 1225, 1230 (D.C.Cir.1994) is also inappropriate at the second stage of the *Chevron* analysis. As ex-

plained above, in *Methodist Hospitals* the challenged regulations involved a critical feature of the Prospective Payment System. At the second stage of the *Chevron* analysis, the court concluded that the Secretary's refusal to make retroactive adjustments to the Prospective Payment System was reasonable in light of the "prospective" nature of the payment system. *Id.* at 1235. But where, as in this case, the Secretary's regulations concern *exemptions* from the Prospective Payment System, her attempts to justify those regulations based upon a policy of furthering the prospective nature of the system is unwarranted.

period. Clearly, if the hospitals thought that they could self-certify, there would be no need for a retroactive exemption from PPS.

Finally, the Secretary asserts that she has taken into consideration Congress's concern that hospitals would be underpaid while establishing their average length of stay by shortening the cost reporting period from twelve months to six months. She also notes that any hospital being paid under PPS has the opportunity to receive outlier payments for extraordinary lengths of stay. These arguments are unpersuasive. Even though the cost reporting period has been abbreviated, the difference in payment under the two systems is still quite significant. And, if Congress had believed that the ability to receive outlier payments provided adequate reimbursement for long-term care hospitals there would have been no need to establish a PPS exemption for these hospitals in the first place.

While a court must generally defer to an agency's policy judgments in construing an ambiguous statute, it "cannot accept them if they seem wholly unsupported or if they conflict with the policy judgments that undergird the statutory scheme." *Health Ins. Ass'n of America, Inc. v. Shalala,* 23 F.3d 412, 416 (D.C.Cir.1994) (holding that two HHS regulations governing Medicare's role as a "Secondary Payer" were invalid). In this case, both the text of the statute and the legislative history indicate that Congress intended to grant long-term care hospitals an exemption for every cost reporting period so that they would not be systematically underpaid. The current regulations are not consistent with how Congress has resolved this issue.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the plaintiffs are entitled to prevail in this action. The Secretary's regulations, 42 C.F.R. §§ 412.22(d), 412.23(e), fail to conform to the Medicare statute which entitles a long-term care

hospital to be reimbursed in accordance with a PPS exemption whenever it has an average length of stay greater than 25 days, including during its first cost reporting period. Moreover, even if Congress has not spoken to the precise question in issue, the regulations are not a reasonable interpretation of the Medicare statute. Accordingly, the Secretary's motion for summary judgment must be denied and the hospitals' motion for summary judgment must be granted.

An appropriate order accompanies this memorandum.