ILLINOIS PUBLIC
TELECOMMUNICATIONS
ASSOCIATION, Petitioner

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Competitive Telecommunications
Association, et al.,
Intervenors.

Nos. 96–1394, 96–1395, 96–1407, 96–1428, 96–1429,96–1466, 96–1476, 96–1478, 96–1479, 96–1482, 96–1484,96–1485, 96–1486, 97–1016, 97–1021, 97–1022, 97–1039,97–1048, 97–1069, 97–1070, 97–1080

United States Court of Appeals,
District of Columbia Circuit.

Decided Sept. 16, 1997.

Before: EDWARDS, Chief Judge,
GINSBURG and SENTELLE, Circuit
Judges.

Supplemental opinion for the court filed by
Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The Interexchange Carrier (IXC) Parties,[1] petitioners and intervenors, have moved for clarification of the effect of our judgment of July 1, 1997 or, alternatively, for partial rehearing. We grant the motion and clarify our opinion as follows.

When this court remands a rule to an agency for further consideration with little or no prospect of the rule's being readopted upon the basis of a more adequate explanation of the agency's reasoning, the practice of the court is ordinarily to vacate the rule. See Allied–Signal, Inc. v. USNRC, 988 F.2d 146, 150–51 (D.C.Cir.1993) (court takes account of "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed"), quoting International Union, UMW v. FMSHA, 920 F.2d 960, 967 (D.C.Cir.1990), which in turn referenced Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C.Cir.1977) and American Hosp. Supply Corp. v. Hospital Prods., Ltd., 780 F.2d 589, 593–94 (7th Cir.1986), both setting out analogous factors considered in deciding whether to grant a preliminary injunction. See also A.B.A. House of Delegates Res. No. 107B (Annual Meeting, San Francisco, Aug. 5–6, 1997) (listing factors to guide the court's exercise of discretion in deciding

1. Cable & Wireless, Inc., the Competitive Telecommunications Association, Excel Telecommunications, Inc., Frontier Corp., LCI International Telcom Corp., MCI Telecommunications Corporation, Sprint Corporation, Telco Communications Group, Inc., and WorldCom, Inc.

whether to vacate agency action, and recommending that "a reviewing court should normally strike the balance in favor of vacating the agency's action, unless special circumstances exist"). Thus we have vacated FCC rules even when we have "not foreclose[d] the possibility that the Commission may develop a convincing rationale" for re-adopting the same rule on remand. *Petroleum Communications, Inc. v. FCC*, 22 F.3d 1164, 1173 (D.C.Cir.1994).

Pursuant to the aforementioned criteria, we now clarify that the court in this case did intend to vacate those portions of the *Payphone Orders*[2] setting at $.35 the compensation that the IXCs must pay to payphone service providers for subscriber 800 and access code calls, both prescriptively during the interim period and as the default rate thereafter. The court likewise intended to vacate those portions of the *Payphone Orders* requiring that, during the first phase of the interim plan, the IXCs with annual toll revenues in excess of $100 million pay the full amount of the compensation rightfully due from all IXCs.

The FCC set the compensation rate for subscriber 800 and access code calls at the deregulated coin call rate of $.35 because of the supposed similarity in the cost of originating the various types of payphone calls. As we emphasized in our opinion, however, "the record in this case is replete with evidence that the costs of local coin calls versus 800 and access code calls are *not* similar." *Illinois Public Telecommunications Ass'n v. FCC*, 117 F.3d 555, 563 (D.C.Cir.1997). The FCC had purported to disagree with that evidence, but it "never provided any reasons

for its 'disagreement.'" *Id.* at 564. We infer that, if it were possible to reconcile the evidence with the agency's decision, the FCC would at least have attempted to do so. The FCC's "failure to respond to contrary arguments based on solid data" not only, as we said, "epitomizes arbitrary and capricious decisionmaking," *id.*; it also leaves the court with no basis for allowing the $.35 rate to remain in place pending further consideration on remand.

The FCC invoked "administrative convenience" for its decision that the 22 largest IXCs would have to pay millions of dollars per month for the costs of services received by other, smaller IXCs during the first phase of the interim plan. As the court explained, however, administrative convenience "cannot possibly justify" that decision. *Id.* at 565. "Perhaps more fundamentally," we noted, "the FCC did not adequately justify why it based its interim plan on total toll revenues, as it did not establish a nexus between total toll revenues and the number of payphone-originated calls." *Id.*

Consequently, the court "grant[ed] the petition for review on these points," including the IXCs' explicit request that the *Payphone Orders* be vacated in these respects. The IXCs' motion for clarification is therefore

Granted.

---

**2.** *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, CC Docket No. 96–128, Report and Order, 11 FCC Rcd 20541 (1996); Order on Reconsideration, 11 FCC Rcd 21233 (1996).