**SELECT SPECIALTY HOSPITAL OF ATLANTA, Plaintiff,**

v.

Tommy G. THOMPSON, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital of Knoxville, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Intensiva Hospital of Knoxville, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital of Little Rock, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital of Wilmington, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital of Johnstown, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital of Ann Arbor, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital of Augusta, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital of St. Louis, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital–Reno, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital–Battle Creek, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital–Denver, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital–Mesa, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital–Tricities, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Select Specialty Hospital–West Columbus, Plaintiff,

v.

Tommy G. Thompson, Secretary, United States Department of Health and Human Services, Defendant,

Nos. CIV.A.01–02344(HHK), CIV.A.01–02346(HHK), CIV.A.01–02348(HHK), CIV.A.02–00245(HHK), CIV.A.02–00686(HHK), CIV.A.02–00687(HHK), CIV.A.03–00067(HHK), CIV.A.03–00068(HHK), CIV.A.03–00119(HHK), CIV.A.03–00977(HHK), CIV.A.03–01143(HHK), CIV.A.03–01144(HHK), CIV.A.03–01145(HHK), CIV.A.03–01146(HHK), CIV.A.03–01147(HHK).

United States District Court, District of Columbia.

Nov. 18, 2003.

E. Carrie Nixon, Tamara Van Antwerp Scoville, Jennifer G. Ruggiero, Reed Smith LLP, Washington, DC, for Plaintiff.

Robert E. Leidenheimer, Jr., Charlotte Bradley, Peter Blumberg, United States Attorneys Office, Elizabeth Margaret Kelly, Sonia M. Orfield, Carole Faith Kagan, U.S. Department of Health & Human Services, Washington, DC, Frances Pergericht Kuperman, Office of the General Counsel, Lawrence J. Harder, Frances Pergericht Kuperman, U.S. Department of Health & Human Services, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

Plaintiffs, several long-term care hospitals participating in the Medicare program, bring this action against defendant, Tommy G. Thompson, Secretary, United States Department of Health and Human Services ("Secretary" or "HHS"). Plaintiffs allege that HHS has interpreted its regulations and applied them in a way that improperly limits Medicare reimbursement for inpatient hospital services furnished by plaintiffs. Presently before this court are cross-motions for summary judgment brought by plaintiffs Select Specialty Hospital of Atlanta, Select Specialty Hospital of Knoxville, Intensiva Hospital of Knoxville d/b/a Select Specialty Hospital of North Knoxville, Select Specialty Hospital of Little Rock, and Select Specialty Hospital of Wilmington (collectively, "Select")[1] [# 18], and by defendant HHS [# 19]. Upon consideration of the cross-motions for summary judgment, the oppositions thereto, and the record of this case, the court concludes that plaintiffs' motion for summary judgment must be denied and that defendant's motion for summary judgment must be granted.

## I. BACKGROUND INFORMATION

Select operates specialty hospitals that provide long-term acute care services for patients with complex medical needs. Select's patients primarily consist of individuals with conditions such as ventilator dependency, respiratory failure, tracheotomy with respiratory needs, spinal cord and head injuries, dysphasia management, chest trauma, neurovascular and neuromuscular disease, hemodialysis, long-term

---

1. Since the filing of the complaints by these plaintiffs, additional hospitals filed identical complaints. These actions have all been consolidated. Motions to remand in *Select Specialty Hospital of Atlanta v. Thompson,* No. 02–00687(HHK); *Select Specialty Hospital of Ann Arbor v. Thompson,* No. 03–00067(HHK); and *Select Specialty Hospital of St. Louis v. Thompson,* No. 03–00119(HHK), remain outstanding. Plaintiff Select Specialty Hospital of Johnstown represents that once its case has been remanded and HHS issues a ruling, it will request that the court apply its rulings on these cross-motions for summary judgment to its case. *See* Pls.' Mot. for Summ. J. at n. 1. Select Specialty Hospital of Ann Arbor and Select Specialty Hospital of St. Louis have not made similar representations.

intravenous therapy, pain control, wound care, and chemotherapy.

## A.  Statutory Framework

The Medicare program is a federal health insurance program for people 65 years of age and older, certain younger disabled people, and people with kidney failure.  42 U.S.C. § 1395 *et seq.*  HHS is responsible for administering the Medicare program and has charged the Centers for Medicare and Medicaid Services ("CMS") with administering the Medicare program. The Medicare program is divided into two parts.  Part A authorizes payment primarily for care in health care institutions, including hospitals; Part B authorizes payment for physicians' services and other medical services.  Only Part A is at issue in this case.

Medicare Part A provides coverage of, among other things, inpatient hospital services.  In 1965, at the start of the Medicare program, hospitals received reimbursement for the "reasonable cost" of providing inpatient services, subject to certain limits.  42 U.S.C. §§ 1395f(b)(1), 1395x(v) (1982).  As part of the Social Security Amendments of 1983, Pub.L. No. 98–21, 97 Stat. 65, Congress established the prospective payment system ("PPS") for the operating costs of acute care hospital inpatient stays, which took effect with cost reporting periods beginning on or after October 1, 1983.  42 U.S.C. § 1395ww(d).  Under PPS, hospitals receive a fixed, prospectively determined, per discharge payment amount based on the diagnosis-related group ("DRG") in which an individual patient is classified. PPS applies to "subsection (d) hospital[s]." 42 U.S.C. § 1395ww(d)(1)(A).  Congress excluded certain types of hospitals from the definition of a "subsection (d) hospital" and thus from PPS:

(i) a psychiatric hospital . . . ,

(ii) a rehabilitation hospital (as defined by the Secretary),

(iii) a hospital whose inpatients are predominantly individuals under 18 years of age,

(iv) (I) *a hospital which has an average inpatient length of stay (as determined by the Secretary) of greater than 25 days . . . .*

42 U.S.C. § 1395ww(d)(1)(B)(i)-(iv) (emphasis added).  Congress established these PPS exclusions because certain types of institutions care for patients whose cost of care is not adequately accounted for through the DRG system.  *See* S. REP. NO. 98–23, at 54 (1983), *reprinted in* 1983 U.S.C.C.A.N. 143, 194; H.R. REP. NO. 98–25, at 141 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 360.

In 1983, HHS promulgated regulations governing the exclusion of hospitals from PPS.  Under these regulations, a long-term care hospital seeking an exclusion must have a provider agreement to participate as a hospital and have an average inpatient length of stay greater than 25 days.  42 C.F.R. § 412.23(e)(1), (2).  The average length of stay is calculated by "dividing the number of covered and noncovered days of stay of Medicare inpatient days (less leave or pass days) by the number of total Medicare discharges for the hospital's most recent complete cost reporting period."  42 C.F.R. § 412.23(e)(3)(i).  "If a change in the hospital's Medicare average length of stay is indicated, the calculation is made by the same method for the period of at least five months of the immediately preceding six-month period."  42 C.F.R. § 412.23(e)(3)(ii).  HHS regulations implement the PPS system in a prospective manner.  The regulations provide that "the status of each currently participating hospital (excluded or not excluded) is determined at the beginning of each cost reporting period and is effective for the

entire cost reporting period. Any changes in the status of the hospital are made only at the start of a cost reporting period." 42 C.F.R. § 412.22(d).

In 1998, the relevant time period in this action, hospitals excluded from PPS received reimbursement under the "reasonable cost" payment system, subject to certain limits. 42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A); 42 C.F.R. § 412.22(b). These limits include both reasonable cost limits, and "rate of increase" limits established by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324.[2] *See* 42 U.S.C. § 1395ww(a), (b); 42 C.F.R. § 413.30 *et seq.*

## B. Factual Background

The first cost reporting period as a long-term care provider under the Medicare program for each of the hospitals that filed the motion for summary judgment ended in calendar year 1998. During that time, the average length of stay, as computed under the regulations, exceeded 25 days for each hospital. During 2000, Mutual of Omaha Insurance Company issued a Fiscal Year ("FY") 1998 notice of program reimbursement to each of these hospitals. Pursuant to that notice of program reimbursement, Select received reimbursement for FY 1998 inpatient hospital operating costs under PPS. The alleged difference between Select's FY 1998 PPS reimbursement for inpatient hospital services and its reasonable cost of such services was a combined total of $1,529,913.[3] Pls.' Statement of Material Facts, ¶¶ 4–10.

Select requested a hearing before the Provider Reimbursement Review Board ("PRRB"), which makes the final determinations regarding Select's Medicare reimbursements. Select filed a request for expedited judicial review pursuant to 42 U.S.C. § 1395oo(f)(1), which the PRRB granted. Based on their FY 1998 length-of-stay data, each hospital was excluded as a long-term care hospital from the prospective payment system for the 1999 fiscal year and was accordingly reimbursed based on the reasonable costs of inpatient hospital services rendered.

Select brought this action as an appeal of the PRRB decision. Select alleges that HHS's Medicare reimbursement for inpatient operating costs based on PPS rather than based on the reasonable costs of providing inpatient services was an improper interpretation of HHS's regulations. Select contends that the HHS regulations, as interpreted by HHS and applied to Select, are invalid under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.,* and the Medicare statute, 42 U.S.C. § 1395 *et seq.* Select seeks reimbursement for inpatient operating costs on the basis of its reasonable costs during FY 1998.

The legal issue in this action is whether HHS properly reimbursed the long-term care hospitals under PPS, rather than excluding them from PPS and reimbursing them based on the reasonable costs of inpatient hospital services rendered during their initial cost reporting periods. This court faced the same issue in *Transitional Hospitals Corp. of Louisiana, Inc. v. Shalala,* 40 F.Supp.2d 6 (D.D.C.1999), and held that HHS's determination violated the Medicare statute. The D.C. Circuit reversed on appeal. *Transitional Hospitals*

2. CMS recently enacted a new rule establishing a new prospective system for Medicare payment of inpatient hospital services provided by long-term care hospitals. 42 C.F.R. § 412.1 *et seq.* This new system replaces the reasonable cost system under which long-term care hospitals were previously reimbursed.

3. This figure also includes the difference for Select Specialty Hospital of Johnstown in FY 1998, which was $216,134. Pls.' Statement of Material Facts, ¶ 9.

*Corp. of Louisiana, Inc. ("THC") v. Shalala*, 222 F.3d 1019 (D.C.Cir.2000). The Court of Appeals determined that at the time the Secretary promulgated the rules, she did not understand that she had discretion to consider alternative permissible constructions of the statute. *Id.* at 1028–29. As a result, the Court of Appeals concluded that the matter should be remanded to the Secretary for consideration of whether she wanted to alter her policy regarding payment of new long-term care hospitals in light of the discretion she possessed. *Id.* at 1029. Thus, the Court of Appeals ordered that the case be remanded to this court with instructions that this court remand it to the Secretary "for further consideration consistent with" the Court of Appeals' opinion. *Id.*

This court granted five of the six unopposed motions to remand to HHS for further consideration consistent with *THC* filed by the hospitals who also filed the motion for summary judgment. Upon reconsideration, CMS issued letters to the five hospitals refusing to permit the exclusion from PPS of a new long-term care hospital, thereby preventing the long-term care hospitals from being reimbursed under the reasonable cost basis during their first cost reporting period. Pls.' Ex. A. HHS decided to apply the identical prospective policy in readjudicating Select's claims and in issuing a new rule in 2001. *Id.*; 66 Fed.Reg. 39,828, 39,917–19 (Aug. 1, 2001). The final rule HHS promulgated specifically considered and rejected the options of self-certification and retroactive adjustment for long-term care hospitals. *Id.*

## II.  ANALYSIS

### A.  Legal Standard for Motion for Summary Judgment

Under FED. R. CIV. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### B.  Administrative Procedure Act Standards

■ An action brought under Section 1878 of the Social Security Act seeking judicial review of Medicare reimbursement actions is subject to the APA. *See* 42 U.S.C. § 1395oo; *Mem'l Hosp./Adair County Health Ctr., Inc. v. Bowen*, 829 F.2d 111, 116–17 (D.C.Cir.1987). Under the APA, a court must set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "contrary to constitutional right, power, privilege, or immunity;" or "in excess of statutory . . . authori-

ty ... or short of statutory right." 5 U.S.C. § 706(2).

■ The Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), set forth the applicable methodology for reviewing whether an agency's interpretation of a statute it administers is in accordance with law. Under *Chevron,* the court must first determine whether Congress has "directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778 ("If the intent of Congress is clear, that is the end of the matter ...."). If Congress has not directly spoken, then the court must defer to a "permissible" construction of the statute by the agency. *Id.* at 843, 104 S.Ct. 2778. In Medicare cases, the court must give additional deference to the Secretary's interpretation of the Medicare statute because of the "tremendous complexity" of the Medicare program. *Methodist Hosp. of Sacramento v. Shalala,* 38 F.3d 1225, 1229 (D.C.Cir.1994); *see Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).

■ An agency's decision is arbitrary and capricious if it was not "based on a consideration of the relevant factors" or if there has been a "clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). An agency rule may be arbitrary and capricious if the agency relied on improper factors, failed to consider an important aspect of the issue, offered an explanation counter to the evidence, or based its decision on implausible reasoning. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

## C. Whether the Secretary's Construction is Consistent with the Purpose of PPS

■ Select acknowledges that the Court of Appeals in *THC* held that the Medicare Act expressly delegates to the Secretary the authority to determine how to calculate the qualifying length of stay for a PPS exclusion. 222 F.3d at 1026. Nonetheless, Select argues that the Secretary's discretion in determining how to calculate the length of stay does not convert the PPS exclusion to a discretionary exclusion. Select maintains that the Secretary cannot withhold the exclusion from newly participating long-term care hospitals in their first cost reporting period. Select argues that the Medicare statutory scheme does not support the Secretary's interpretation of the statute because the Secretary's interpretation is contrary to the congressional intent underlying the PPS exclusions. Select further argues that the Secretary's interpretation is impermissible because it results in systematic underpayment to long-term care hospitals in their first cost reporting period. These hospitals are reimbursed under PPS for acute, short-term patient care when the hospitals are actually treating long-term care patients. Thus, a long-term care hospital will lose money during its first cost reporting period until it can qualify for the PPS exclusion in future periods and be appropriately reimbursed thereafter.

Select argues that HHS's reliance on the prospective nature of PPS generally is misplaced, and that the policies to be considered are those underlying the PPS *exclusions.* Select relies on congressional intent underlying the PPS exclusion to support its argument. Congress recognized that "[t]he DRG classification system was developed for short-term acute care general hospitals and ... does not adequately take into account special circum-

stances of diagnoses requiring long-stays and as used in the Medicare program is inappropriate for certain classes of patients." S. REP. NO. 98–23, at 54 (1983), *reprinted in* 1983 U.S.C.C.A.N. 143, 194; *see* H.R. REP. NO. 98–25, at 141 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 360.[4]

HHS responds that the Secretary's interpretation was permissible because it is consistent with the Congress's goals in enacting PPS. Congress sought to promote certainty and predictability of payment by determining at the start of each cost reporting period whether a hospital is subject to or excluded from PPS. HHS contends that even when reimbursement "shortfalls" may result, the D.C. Circuit has upheld such permissible interpretations of the Medicare statute. In *Methodist Hospital,* the Secretary declined to retroactively correct the "wage index" component of PPS when data underlying the calculation of this component understated the actual costs hospitals incurred. 38 F.3d at 1228–29. In finding that the Secretary's decision was rational, the Court of Appeals stated that "a prospective-only policy preserves the expectations of all parties in the PPS system and facilitates the economic incentives that Congress intended." *Id.* at 1233 (citing H.R. REP. NO. 98–25, at 132, *reprinted in* 1983 U.S.C.C.A.N. 219, 351). Similarly, in *County of Los Angeles v. Shalala,* 192 F.3d 1005 (D.C.Cir.1999), the D.C. Circuit upheld the Secretary's decision not to provide retroactive reimbursement for certain costs that Congress recognized would not be covered by PPS. The Court of Appeals held that the Secretary's decision was reasonable and in line with the goals of "cer-

tainty and predictability" underlying the PPS system. *Id.* at 1019.

The court is not persuaded by Select's argument that congressional intent underlying PPS exclusions requires the Secretary to reach a decision that adopts self-certification or retroactive adjustments to reimbursements. The portion of the congressional record Select cites merely indicates that reimbursement under PPS is inappropriate for certain classes of patients who require long stays. *See* S. REP. No. 98–23, at 54; H.R. REP. NO. 98–25, at 132. Thus, congressional intent behind the PPS exclusions does not speak to *how* the Secretary must take into account the inpatient services hospitals will provide to these types of patients. Furthermore, determining whether a hospital fits a PPS exclusion is entwined with implementation of the PPS system. Thus, the goals of certainty and predictability that underlie PPS generally must also apply to PPS exclusions.

The court concludes that the Secretary's decision was permissible under the Medicare statute. Indeed, the Court of Appeals' decision in *THC* leaves little room for this court to find that the Secretary's prospective policy is not reasonable. The Court of Appeals stated that the statutory criterion of " 'an average' inpatient stay of greater than 25 days .... strongly militates against plaintiffs' view that a hospital's status must be measured at every moment in time." 222 F.3d at 1026. The *THC* court recognized that newly participating long-term care hospitals could not have a 25–day average from the first day of the first cost reporting period because "an average" could exist no earlier than

---

4. Select also relies on this court's opinion in *Transitional Hospitals Corp. of Louisiana, Inc. v. Shalala,* 40 F.Supp.2d 6 (D.D.C.1999), in which this court stated that "the statutory exclusion of certain categories of hospitals from PPS reflects Congress's recognition that

reimbursement of these hospitals on a prospective basis is not appropriate." *Id.* at 13. The Court of Appeals, however, reversed this court's decision in *THC*. Thus, Select's reliance on this court's opinion in *THC* is inapposite.

the 25th day. *Id.* The court also stated that the statute's parenthetical phrase, "as determined by the Secretary," gave the agency "considerable leeway to determine how 'has' is to be defined, and whether to require prospective, contemporaneous, or retrospective evaluation and payment." *Id.* The court also stated that the statute's language defining a long-term care hospital was ambiguous and "may refer to the hospital's status at the beginning of, during, or at the close of a cost reporting period." *Id.* at 1028. Thus, the *THC* opinion suggests that so long as the Secretary made a "fresh determination" knowing that she had the discretion to interpret the statute in a manner that was not prospective-only, a decision to use a prospective approach would be reasonable. *Id.* at 1029.

Although Select's proposed interpretation of the statute is also reasonable, this court must defer to the agency's permissible construction of the statute. The D.C. Circuit has upheld interpretations of the Secretary that fail to reimburse hospitals for all of their costs. *County of Los Angeles,* 192 F.3d at 1019; *Methodist Hosp.,* 38 F.3d at 1233. This Circuit has stated that although "retroactive corrections may not ultimately undermine PPS, we have emphasized that that 'does not establish that a prospective-only policy is unreasonable.'" *County of Los Angeles,* 192 F.3d at 1019 (quoting *Methodist Hosp.,* 38 F.3d at 1232). Accordingly, this court concludes that the Secretary's decision was consistent with the purpose of PPS and PPS exclusions.

## D. Disparate Treatment of Similarly Situated Providers

■ An additional factor in determining whether an agency's interpretation is arbitrary is whether the agency action treats similarly situated entities differently without sufficient explanation. *See Transactive Corp. v. United States,* 91 F.3d 232, 237 (D.C.Cir.1996). Select argues that the Secretary's interpretation results in disparate treatment of similarly situated providers. Select contends that the regulations effectively establish two classes of long-term care hospitals that are reimbursed differently: (1) newly participating long-term care hospitals that receive PPS payment and (2) established long-term care hospitals that receive reimbursements for their reasonable costs. Select argues that the Medicare statute does not support a distinction that creates such barriers to entry for newly participating long-term care hospitals.

Select also argues that the Secretary's interpretation of the exclusion for long-term care hospitals is inconsistent with the exclusion for rehabilitation hospitals. Under HHS regulations, to qualify as a rehabilitation hospital, at least 75 percent of the hospital's patients must require intensive rehabilitation services for one of ten enumerated conditions. 42 C.F.R. § 412.23(b). The regulations regarding the exclusion for rehabilitation hospitals permit a newly participating rehabilitation hospital to self-certify in advance that it intends to serve the types of patients specified. 42 C.F.R. § 412.23(b)(8). If a hospital's discharges reveal that the hospital did not serve rehabilitation patients, the hospital must then retroactively repay the Medicare program for the difference between its reasonable costs and the PPS repayment amount. 42 C.F.R. § 412.23(b)(9). Select contends that no distinction between the treatment of newly participating long-term care hospitals and newly participating rehabilitation hospitals exists in the Medicare statute. Select maintains that the self-certification scheme rehabilitation hospitals use could be applied to long-term care hospitals, with retroactive repayments to the Medicare program in the event a hospital does not ultimately meet the requirement.

HHS rejoins that there are significant differences between rehabilitation hospitals and long-term care hospitals that require different treatment. Based on the language of the statute itself, HHS maintains that Congress gave the Secretary broader authority to define rehabilitation hospitals than long-term care hospitals because a definition of long-term care hospitals was included in the statute. HHS defined rehabilitation hospitals by promulgating a regulations that contained seven defining features.[5] 42 C.F.R. § 412.23(b). HHS claims that other than a requirement that 75% of the patients be of a certain type, these factors are primarily "static and observable," and "can be accurately assessed when a new rehabilitation hospital is first certified under the Medicare program." Pl.'s Ex. A (Letter regarding Select Specialty Hospital of Atlanta, at 5). HHS maintains that the Secretary's determination that a hospital's ability to meet six of the requirements "provides an adequate level of assurance that the hospital will also meet the 75% requirement if it so certifies." *Id.* In contrast, HHS contends that long-term care hospitals have only one distinguishing characteristic, which is the greater than 25–day average length of inpatient stay. Because "average length of stay can be difficult, if not impossible to forecast when a new hospital first opens its doors for service," the Secretary determined that allowing new hospitals to self-certify that they would have an average length of stay greater than 25 days was not appropriate. *Id.; see also* 57 Fed.Reg. 39,746, 39,800–01 (Sept. 1, 1992) (discussing and rejecting a suggestion that self-certification be extended to long-term care hospitals).[6]

In 1992, HHS revised the PPS system and proposed a rule that would recognize changes in the status of each hospital only at the start of a cost reporting period. 57 Fed.Reg. 23,618, 23,657 (June 4, 1992). In response to this proposed rule, HHS received a comment suggesting that the process of self-certification for rehabilitation hospitals should be extended to long-term care hospitals. 57 Fed.Reg. at 39,800. HHS rejected self-certification for long-term care hospitals because the qualifications for a rehabilitation hospital could be "assessed at a given point in time," but the criterion of average inpatient length of stay for long-term care hospitals could "be assessed only over a period of time." *Id.* at 39,801.

The court concludes that rehabilitation hospitals and long-term care hospitals are not similarly situated. Although both types of hospitals serve patients with special circumstances that warrant an exclusion from the PPS system, long-term care hospitals necessarily must wait for a peri-

---

5. These requirements include: having a valid provider agreement in place, a showing that 75% of its patients be of a certain type, the existence of a preadmission screening process, assurance that patients will receive close medical supervision and that the hospital will furnish certain types of therapy through the use of qualified personnel, the presence of a director of rehabilitation with certain qualifications, having a plan of treatment for each inpatient that is established and monitored by a physician, and the use of a coordinated interdisciplinary team approach in the rehabilitation of each patient. 42 C.F.R. § 412.23(b).

6. The court notes that the Secretary's decision not to permit long-term care hospitals to self-certify is consistent with the Secretary's treatment of children's hospitals, which are also excluded from PPS. 42 U.S.C. § 1395ww(d)(1)(B)(iii). Like long-term care hospitals, children's hospitals also have a single distinguishing characteristic, which is that their inpatients are predominantly under 18 years of age. 42 C.F.R. § 412.23(d). A children's hospital is not permitted to self-certify that it will meet this requirement in future cost reporting periods. *Id.*

od of time in order to have an average length of stay greater than 25 days. Because the 25–day average cannot be determined until at least the 25th day of a new hospital's first cost reporting period, the Secretary can reasonably decide to use a prospective approach. Therefore, the court finds that the difference in the Secretary's treatment of rehabilitation hospitals and long-term care hospitals is not improper.

## E. Whether *THC* Vacated HHS Regulations

Select argues that the D.C. Circuit's opinion in *THC* vacated the Secretary's prior rule and therefore revived the reasonable cost basis reimbursement scheme in effect before PPS was enacted. HHS argues that *THC* remanded to the Secretary without vacating the rule and the Secretary's decision after remand did not constitute retroactive rulemaking. The parties do not dispute that the Court of Appeals in *THC* invalidated the HHS regulations. The *THC* court found that the Secretary incorrectly believed she lacked the discretion to do what the hospitals requested. 222 F.3d at 1029. The *THC* court stated that the Secretary erroneously assumed that under the Medicare statute, " 'a hospital cannot qualify as a long-term care hospital until it has been in operation for some period of time.' " *Id.* (quoting 57 Fed.Reg. at 39,801). In declaring the Secretary's interpretation invalid, the Court of Appeals cited *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), which set forth the principle that an agency "order may not stand if the agency has misconceived the law." *Id.* at 94, 63 S.Ct. 454. The court also quoted *Prill v. NLRB*, 755 F.2d 941 (D.C.Cir.1985), in which the D.C. Circuit held that "an agency regulation must be declared invalid, even though the agency might be able to adopt the regulation in the exercise of its discretion, if it was not

based on the [agency's] own judgment but rather on the unjustified assumption that it was Congress' judgment that such [a regulation is] desirable." *Id.* at 948 (internal quotation marks omitted) (alterations in original). The Court of Appeals then remanded to this court to remand to the Secretary to "make a fresh determination as to whether she wishes to adopt the self-certification or retroactive adjustment options." 222 F.3d at 1029.

Select argues that the Court of Appeals in *THC* necessarily vacated the HHS regulations because the Secretary's belief that it did not have discretion to do what the hospitals requested was a misconception of the law. Select contends that when an agency acts pursuant to a misconception of the law, the agency action must be vacated, relying on *Chenery*, 318 U.S. at 94, 63 S.Ct. 454; *Sea–Land Service, Inc. v. Department of Transportation*, 137 F.3d 640, 646 (D.C.Cir.1998); *Prill*, 755 F.2d 941, 942; *Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C.Cir.1983); and *EEX Corp. v. U.S. Department of Interior*, 111 F.Supp.2d 24, 32 (D.D.C.2000). These cases, however, do not directly stand for the proposition that agency action based on a misconception of the law must be vacated. *Chenery*, *Prill*, and *EEX* did not expressly vacate the agency rule upon remand to the agency. *Chenery*, 318 U.S. at 95, 63 S.Ct. 454; *Prill*, 755 F.2d at 948, 957, *EEX*, 111 F.Supp.2d at 33. In *Sea–Land*, the court expressly vacated the agency order because the agency's misconception of the law was the "sole basis" for the orders, 137 F.3d at 646, and the court's determination that the law was contrary to the agency's belief "completely undermines [the agency's] orders." *Id.* at 642. *Action on Smoking* construed an earlier decision which explicitly stated that the invalid portion of the regulation at issue was "vacated." *See Action on Smoking & Health v. CAB*, 699 F.2d 1209, 1219 (D.C.Cir.1983).

HHS contends that *THC* did not vacate the Secretary's prior rule, relying on cases in which the court invalidated agency action and remanded to the agency without vacating. *Checkosky v. SEC,* 23 F.3d 452, 462 (D.C.Cir.1994) (rejecting the proposition that all arbitrary and capricious agency action must be "set aside" or "vacated" because it would "fundamentally alter the role of the judiciary vis-a-vis administrative agencies by forcing courts to decide that the agency's action is either unlawful or lawful on the first pass, even when the judges are ... not confident that they have discerned the agency's full rationale"); *ICORE, Inc. v. FCC,* 985 F.2d 1075, 1081 (D.C.Cir.1993) (stating that it is appropriate to remand agency action without vacating it in certain circumstances, such as lack of reasoned decisionmaking or practical necessities); *A.L. Pharma, Inc. v. Shalala,* 62 F.3d 1484, 1492 (D.C.Cir. 1995) (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.,* 920 F.2d 960, 967 (D.C.Cir.1990)); *Allied–Signal Inc. v. NRC,* 988 F.2d 146, 153 (D.C.Cir.1993). These cases, however, dealt with the situation when the agency failed to provide an adequate explanation, not when an agency action was invalidated because of an erroneous view of the law. The Court of Appeals in *THC,* however, did not remand to HHS for further explanation, but to "make a fresh determination." 222 F.3d at 1029.

Thus, the cases HHS relies upon do not directly govern the instant case either.

Although the *THC* court did not expressly vacate or decline to vacate the agency action upon remand, this court finds that the language of the decision as a whole supports the conclusion that the *THC* court vacated the Secretary's prior rule. The *THC* court cited *Chenery* for the proposition that agency orders based on misconceptions of law cannot stand. The language, "make a fresh determination," suggests that HHS is required to confront the issue anew rather than articulate a more comprehensive explanation that discusses the options of self-certification or retroactive adjustments that the hospitals proposed. The *THC* opinion did not address the factors courts consider in determining whether or not to vacate an agency rule pending further explanation, which are " 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed....' " *Int'l Union,* 920 F.2d at 967. Nor did the *THC* court discuss any equitable factors that would require a rule promulgated in violation of the APA to remain in effect while the agency remedied the procedural defects. *See Fertilizer Inst. v. EPA,* 935 F.2d 1303, 1312 (D.C.Cir.1991). Therefore, the court concludes that *THC* did not permit the Secretary's rule to remain in effect upon remand.[7]

7. The court notes that if the *THC* court did remand to the Secretary without vacating, Select cannot recover the difference between PPS and reasonable cost basis reimbursement for FY 1998. The Secretary's decision in 2001 to adopt a prospective approach, knowing that the other options were available, was permissible. In the event that the Secretary's prior rule was not vacated, the Secretary's promulgation of the 2001 rule would have no retroactive effect in violation of *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). The D.C. Circuit has held that *Georgetown* did not address the situation when a court leaves invalid rules in place upon remand to the agency for further explanation. *See ICORE,* 985 F.2d at 1081. In such a case, the agency's promulgation of a new rule after reconsideration does not have an impermissible retroactive effect. *Id.* at 1081–82; *Allied–Signal Inc. v. NRC,* 988 F.2d 146, 153 (D.C.Cir.1993). Therefore, Select would not be entitled to prevail on its claims if the *THC* court did not vacate the Secretary's prior rule.

## F. Whether the Former Reasonable Cost Reimbursement Scheme Applies

■ Select argues that because *THC* invalidated the Secretary's prior rule, the reasonable cost reimbursement scheme that existed before PPS becomes effective. "[U]ntil rendered invalid by a court decision or replaced by a valid new regulation, the prior method of reimbursement remains operative." *Abington Mem'l Hosp. v. Heckler,* 750 F.2d 242, 244 (3d Cir.1984) (citing *Action on Smoking,* 713 F.2d at 797); *see Menorah Med. Ctr. v. Heckler,* 768 F.2d 292, 297 (8th Cir.1985) (invalidating an agency rule and implementing prior regulations instead). Select correctly states that when an agency rule is declared invalid, the prior rule will be used in its place. *Abington* and *Menorah* were cases in which the regulation that was invalidated replaced a prior existing regulation that governed the precise issue at hand. Unlike *Abington* and *Menorah,* however, in the instant case no prior rule existed to determine whether a hospital qualified for the long-term care exclusion from PPS. Congress displaced the former reasonable cost reimbursement scheme as the default payment scheme in 1983 when it enacted the PPS scheme as the default scheme and exempted certain types of hospitals from PPS. Although *THC* invalidated the Secretary's prior rule determining when hospitals qualify for the long-term care exclusion, no prior regulation exists that would spring back to life to guide the Secretary in making that determination. After PPS was enacted in 1983, reasonable cost payment rules merely describe *how* to pay a hospital once it has been determined that the reasonable cost reimbursement scheme applies because a hospital fits a PPS exclusion. The default PPS scheme has not been invalidated. Therefore, the former reasonable cost reimbursement does not become operative.

## G. Unauthorized Retroactive Rule

■ Select argues that HHS's decision to deny Select's request for exclusion from PPS is an improper application of a retroactive rule. Select relies on *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), which held that a retroactive rule is invalid unless Congress expressly delegates such authority to the agency. The *Georgetown* Court recognized that the Medicare Act did not expressly grant authority to the Secretary to promulgate a retroactive rule. *Id.* at 213, 109 S.Ct. 468. Plaintiff argues that because the HHS's decision to deny Select's request for exclusion from PPS is an improper application of a retroactive rule, the invalid rule should be set aside and the prior rules lawfully in effect should be reinstated. *Action on Smoking,* 713 F.2d at 797; *Abington,* 750 F.2d at 244; *Mason Gen. Hosp. v. Sec'y, Dep't of Health & Human Servs.,* 809 F.2d 1220, 1223 (6th Cir.1987); *Menorah,* 768 F.2d at 297.

The Secretary's action in the instant case does not represent impermissible retroactive rulemaking. Because the 2001 regulation was not in effect during FY 1998, and no prior rule governing the issue existed, the Secretary was authorized to determine whether the long-term care exclusion applied via adjudication. *See Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87, 96, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) ("The APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than by adjudication."). The Secretary's decisions as to each of the five Select hospitals in light of *THC* were proper adjudicative actions, not retroactive rulemaking. The Secretary's adjudications adopted the same reasoning as in its 2001 rulemaking, but was not a rulemaking to be applied across the board to FY 1998. *See* Pl.'s Ex.

A. Even if the Secretary had improperly applied its 2001 rule to Select, as discussed above, the former reasonable cost basis repayment scheme does not become operative simply because the Secretary's action is invalid.

### III. CONCLUSION

For the foregoing reasons, the court concludes that plaintiffs' motion for summary judgment must be denied and that defendant's motion for summary judgment must be granted.