# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 16, 2008        Decided May 12, 2009

No. 07-5345

HEARTLAND REGIONAL MEDICAL CENTER,
APPELLANT

v.

KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN
SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02802)

*Michael B. DeSanctis* argued the cause for appellant. With him on the briefs were *Donald B. Verrilli Jr.*, *Michelle A. Groman*, and *Christopher L. Crosswhite*.

*Thomas H. Dupree Jr.*, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Michael Jay Singer*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, TATEL and BROWN, *Circuit Judges*.

GINSBURG, *Circuit Judge*: In 2000 the Department of Health and Human Services denied Heartland Regional Medical Center status within the Medicare program as a sole community hospital (SCH) for the years 1992 through 1999. HHS based its decision upon a 1992 regulation that provided a hospital located within 35 miles of a "like" hospital could qualify as an SCH only if it was in a rural area. As a consequence of the denial, Heartland received reimbursement for less than the actual cost of the healthcare it provided to Medicare beneficiaries during those years. Heartland petitioned the district court for review under the Administrative Procedure Act, arguing the district court had vacated the rural location rule in 1998, wherefore HHS should have held a hearing to consider the hospital's fact-specific claim to be an SCH. The district court granted summary judgment to HHS without deciding whether the court's 1998 decision had indeed vacated the rule. We conclude the 1998 decision did not vacate the rural location requirement and therefore affirm the judgment of the district court on that ground.

## I. Background

Part A of the Medicare program "provides basic protection against the costs of hospital ... care" for the elderly and disabled. 42 U.S.C. § 1395c. A hospital that provides inpatient services to a Medicare beneficiary receives reimbursement under the Prospective Payment System (PPS), which pays a fixed amount regardless of the actual cost of the care. *Id.* § 1395ww. Because a hospital may incur a loss whenever it treats a Medicare beneficiary, the Congress, concerned not to overburden a hospital that is the only source of care in its vicinity, exempted "sole community hospitals"

from the PPS: An SCH instead receives reimbursement for the actual cost it incurs in providing care to each Medicare beneficiary. *See Clinton Mem'l Hosp. v. Shalala*, 10 F.3d 854, 855–56 (D.C. Cir. 1993) (discussing both Congress's "[a]ware[ness] that some hospitals might not flourish" under the PPS and its decision to codify HHS's exemption for SCHs). In 1992 the Medicare Statute defined an SCH as "any hospital ... located more than 35 road miles from another hospital ... [or one] that, by reason of [other] factors ... is the sole source of inpatient hospital services reasonably available to individuals in a geographic area." 42 U.S.C. § 1395ww(d)(5)(D)(iii). An HHS regulation interpreted the other "factors" in such a way that a hospital located within 35 miles of "other like hospitals" would be an SCH only if it was "located in a rural area," 42 C.F.R. § 412.92(a) (1992), meaning "any area outside an urban area," including any "Metropolitan Statistical Area (MSA) ... as defined by the Executive [*sic*] Office of Management and Budget," *id.* § 412.62(f)(1)(ii)–(iii).

In order to apply for SCH status under the 1992 regulation, a provider would contact its "fiscal intermediary," which would make a recommendation to the Health Care Financing Administration (HCFA),[*] *id.* § 412.92(b)(1)(i)–(v), the unit within HHS that administered the Medicare program pursuant to a delegation from the Secretary. The HCFA's decision to disapprove a hospital's application for SCH status was subject to review by the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo(a) (1992); 42 C.F.R. § 405.1835(a) (1992).

---

[*] The HCFA is now known as The Centers for Medicare and Medicaid Services. *See* Centers for Medicare & Medicaid Services; Statement of Organization, Functions and Delegations of Authority; Reorganization Order, 66 Fed. Reg. 35,437 (2001).

Heartland Regional Medical Center, which is located in St. Joseph, Missouri, applied for status as an SCH in 1992. The HCFA denied Heartland's application because Heartland is in an urban area, to wit, the St. Joseph MSA, and is fewer than 35 miles from the nearest like hospital. Heartland appealed to the PRRB, arguing HHS lacked authority to promulgate the rural location requirement. The PRRB held it lacked jurisdiction to resolve this legal question and therefore granted the hospital's request to seek direct judicial resolution of its challenge.

Heartland repaired to the district court, where it argued the rural location requirement was inconsistent with the Medicare Statute and, in any event, HHS had not adequately explained why the requirement was appropriate. The district court disagreed on both those counts, *Heartland Hosp. v. Shalala*, No. 95-951, slip op. at 15, 19 (D.D.C. June 15, 1998) (*Heartland I*), but it accepted Heartland's alternative argument that HHS had defined "urban area" by reference to the OMB's definition of an MSA without adequately considering other approaches raised in public comments upon the proposed rule. The district court held that, because HHS had "fail[ed] ... to respond to reasonable alternative" definitions of an urban area, the rule was "invalid," *id.* at 23–24, wherefore the court "remanded [the rule] to [HHS] for action consistent with the [court's] opinion."

On remand HHS issued a notice of proposed rulemaking to reconsider its decision to define "urban area" as an MSA. *See* Proposed Rule: Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2000 Rates, 64 Fed. Reg. 24,716, 24,732 (1999). Meanwhile, the HCFA reopened its adjudication of Heartland's claim to status as an SCH. After receiving further

public comments in the rulemaking proceeding, HHS considered the alternatives but decided to retain the rural location requirement and its MSA-based definition. *See* Final Rule: Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2000 Rates, 64 Fed. Reg. 41,490, 41,513–15 (1999). Shortly thereafter, however, the Congress amended the Medicare Statute to preclude HHS from maintaining the rural location requirement. Consolidated Appropriations Act, 2000, Pub. L. No. 106-113, app. F, tit. IV.A, § 401, 113 Stat. 1501, 1501A-369 (1999). On August 31, 2000 the HCFA designated Heartland an SCH, effective as of January 1, 2000.

On September 6, 2000 the HCFA denied Heartland's request that it be deemed an SCH for the years 1992 through 1999, giving three reasons. First, the HCFA reasoned that the court in *Heartland I* had not vacated the rural location requirement but had merely remanded it to HHS to consider alternatives to defining "urban area" as an MSA; once HHS had duly considered and rejected the alternatives, the HCFA could lawfully deny Heartland's application based upon the rural location requirement. The HCFA reasoned in the alternative that, even if the court in *Heartland I* did vacate the rule, the HCFA could, in adjudicating Heartland's status, adopt the same rural location requirement and apply it retroactively to 1992 based upon HHS's reasoning in the 1999 rulemaking. The HCFA's third reason for denying SCH status was new: Heartland's 1992 application had not adequately defined the hospital's service area.

Heartland returned to the district court and filed both a motion to enforce the judgment in *Heartland I* and a challenge under the APA to the HCFA's new decision. In the motion to enforce, Heartland sought reimbursement of its actual costs of care for Medicare beneficiaries, plus interest,

for the years 1992 through 1999. The district court denied that motion, *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 15 (D.D.C. 2004) (*Heartland II*), and we affirmed because "even if *Heartland I* vacated the rural area requirement, the only obligation it expressly imposed on the agency was to consider the two alternatives suggested during the comment period," *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (2005) (*Heartland III*).

In its APA challenge to the HCFA's three reasons for denying it status as an SCH, Heartland argued the district court in *Heartland I* had vacated the rural requirement and remanded the matter for HHS to develop the particular facts relevant to Heartland's claim to be an SCH. The district court granted summary judgment to HHS without deciding whether it had in *Heartland I* vacated the rural location requirement, *Heartland Reg'l Med. Ctr. v. Leavitt*, 511 F. Supp. 2d 46, 52 (D.D.C. 2007) (*Heartland IV*), relying upon our statement in *Heartland III* that "with or without vacatur, an agency that cures a problem identified by a court is free to reinstate the original result on remand," 415 F.3d at 29–30. By considering alternatives in its 1999 rulemaking, HHS had cured the problem and thereby cleared the way for the HCFA to apply the rural location requirement and deny Heartland's application. *Heartland IV*, 511 F. Supp. 2d at 52–56. Heartland appeals that ruling, which we review *de novo*. *See Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 929 (D.C. Cir. 2008).

## II. Analysis

Heartland contends that because *Heartland I* vacated the rural location rule in force from 1992 to 1998 and HHS did not promulgate a new rural location rule until 1999, the HCFA retroactively applied a rural location requirement in

the 2000 adjudication when it denied the hospital's application for reimbursement as an SCH in 1992 through 1999. Although Heartland does not dispute that a principle announced in adjudication is necessarily retroactive, *see Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311–12 (1994); *Goodman v. FCC*, 182 F.3d 987, 994 (D.C. Cir. 1999), the hospital points out that the agency could not have applied HHS's 1999 rule retroactively to deny Heartland's application "unless that power [had been] conveyed by Congress in express terms," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208–09 (1988). Heartland asserts the Congress gave the agency no such power and therefore the HCFA had but two options on remand: It could have either (a) adjudicated Heartland's application by reference solely to the statutory criteria in force from 1992 through 1999, which did not include a rural location requirement, or (b) adopted a rural location requirement, as a matter of statutory interpretation, and applied it retroactively through adjudication. In either event, Heartland argues, the HCFA should have permitted Heartland to argue against the adoption of a rural location requirement and to submit evidence related to its eligibility under the statutory criteria. The HCFA's refusal to permit the introduction of such argument and evidence was, according to the hospital, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). Heartland also raises procedural and substantive challenges to the HCFA's alternative ground for denying its application, *viz.*, that the hospital did not properly define its service area.

HHS does not take issue with Heartland's analysis of the options open to the HCFA on remand — assuming, as Heartland does, the district court in *Heartland I* vacated the

rural location requirement.[*]    Instead, HHS disputes that assumption.    Citing *Allied-Signal, Inc. v. United States Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993), HHS contends the district court did not vacate the rule because vacatur of the regulation would have been contrary to this circuit's precedent and unwarranted in light of the "prospect of the rule's being readopted upon the basis of a more adequate explanation of the agency's reasoning," *Ill. Pub. Telecomms. Ass'n v. FCC*, 123 F.3d 693, 693 (D.C. Cir. 1997).

We agree with HHS that *Heartland I* did not vacate the rural location requirement.   The hospital's argument to the contrary is based upon the erroneous proposition that when a district court declares a regulatory requirement "invalid," it thereby necessarily vacates the regulation in which that requirement is expressed.  *See Heartland I*, slip op. at 24.

To determine the effect of the judgment in *Heartland I*, however, we must look not only to the district court's having declared the rural location rule "invalid," but also to the nature of the flaw in the agency decision there under review, to circuit law governing the proper remedy for such a flaw, and to the remanding court's analysis of that flaw, viewed in the context of "the decision as a whole." *See Select Specialty Hosp. of Atlanta v. Thompson*, 292 F. Supp. 2d 57, 68–69 (D.D.C. 2003).   In *Illinois Public Telecommunications Ass'n v. FCC*, for example, we granted the petition for review, stating only that "we remand this issue to the agency for further consideration."   117 F.3d 555, 564 (1997).   Upon granting the petitioners' motion for clarification, we looked to

---

[*] HHS does not agree with Heartland, however, that any further proceedings were required before the HCFA could rule against Heartland's application.

the law governing remedies and explained that our prior judgment should be understood to have vacated the rule because the accompanying opinion indicated the agency had "little or no prospect" of curing the defect in the rule. *See Ill. Pub.*, 123 F.3d at 693–94; *see also Ill. Pub.*, 117 F.3d at 564 (doubting agency had basis for factual conclusion it had adopted "cavalierly," without acknowledging contrary empirical evidence, and defended on reconsideration by stating only that it "disagree[d]" with contrary proposition).

When the district court decided *Heartland I* in 1998, the law of this circuit was (as it had been since 1993) that in deciding whether to vacate a flawed agency action, the district court should be guided by two principal factors: (1) "'the seriousness of the ... deficiencies'" of the action, that is, how likely it is "the [agency] will be able to justify" its decision on remand; and (2) "the disruptive consequences of vacatur." *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1048–49, *modified on reh'g on other ground*, 293 F.3d 537 (2002) (quoting *Allied-Signal,* 988 F.2d at 150–51); *Ill. Pub.*, 123 F.3d at 693–94 (applying *Allied-Signal* factors but also citing ABA House of Delegates Rec. No. 107B (ABA Report) (1997), which lists additional "factors to guide the court's ... discretion"). Heartland maintains that, because the district court did not apply the *Allied-Signal* factors in *Heartland I*, it must have intended to vacate the rural location rule. The *Allied-Signal* factors were well understood, however, when the district court decided *Heartland I*. Because both factors unambiguously pointed to remand without vacatur, and that is what the opinion, on its face, suggests, that is how the judgment should be understood.

The district court in *Heartland I* declared the rural requirement "invalid" solely because of "[t]he failure of [HHS] to respond to reasonable alternative" ways of defining

"urban areas," slip op. at 23–24, and remanded the matter to HHS "for action consistent with the foregoing opinion," which could only mean responding to those alternatives. When an agency may be able readily to cure a defect in its explanation of a decision, the first factor in *Allied-Signal* counsels remand without vacatur. *See La. Fed. Land Bank Ass'n v. Farm Credit Admin.*, 336 F.3d 1075, 1085 (D.C. Cir. 2003); Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 DUKE L.J. 291, 379 (2003) (citing ABA Report and endorsing cases in which the "perception [that agency may be able to cure defect] tends to militate towards leaving the action in place while the agency addresses the deficiency"); ABA Report ("special circumstances" justifying remand without vacatur include "substantial likelihood that the agency, after further consideration, will be able to remedy its error and reach a similar overall result on a valid basis").

The second factor — the disruptive effect of vacatur — pointed in the same direction. Under the rule in effect from 1992 through 1998, Heartland and similarly situated hospitals were not eligible for reimbursement as SCHs. *See* 42 C.F.R. § 412.92(a) (1992). Vacating the rural location requirement for eligibility likely would have required HHS to make payments to those hospitals for those years and for any subsequent years until the agency repromulgated the same rule and gave an adequate reason for rejecting the alternatives. Reinstating the same rule, however, likely would not have enabled HHS to recover payments made for 1992 through the time of reinstatement, as is implied by the HCFA's position in the order under review, *viz.*, that if the court in *Heartland I* had vacated the 1992 rule, then the presumption against retroactive rulemaking outlined in *Georgetown* would have prevented the HCFA from applying the 1999 rule in order to deny Heartland's application. Without deciding whether the

agency correctly understood the statute (as it then was) to preclude retroactive application of a rural location rule, we think it sufficient for the purpose of the second *Allied-Signal* factor that vacatur of the rural location requirement would have raised substantial doubt about HHS's ability to recoup payments it made for years prior to reinstatement of that requirement. *See Georgetown*, 488 U.S. at 207, 215 (rejecting HHS's attempt, through promulgation of a retroactive rule, to recoup payments made in response to vacatur of rule). In sum, both factors counseled remand without vacatur, and we conclude that is what the district court did in *Heartland I*.

Heartland nonetheless insists the court must have vacated the rule because it declared the rule "invalid," but the terms "invalid" and "vacated" are not synonyms. That is why we may label an agency's action "invalid" even when we have remanded it for further proceedings without having vacated it. *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 856 (D.C. Cir. 2008) (noting prior decision held agency rules were "invalid" but "remand without vacatur left ... rules in place"). Nor are the concepts those terms denote inseparable. Thus, in *Rodway v. United States Department of Agriculture*, 514 F.2d 809, 813–14 (D.C. Cir. 1975), the agency failed to provide public notice and an opportunity for comment before it adopted regulations establishing an allotment system for the federal food stamp program and then issued the regulations without the "concise general statement of their basis and purpose" required by APA § 4(c), 5 U.S.C. § 553(c). We held the regulation "invalid as promulgated." *Rodway*, 514 F.2d at 817. In light of the "critical importance of the allotment regulations," however, "we [did] not order the regulations vacated pending" a curative rulemaking on remand. *Id.* As *Core Communications* and *Rodway* illustrate, therefore, vacatur need not be the remedy for an invalidly adopted rule. Bearing in mind the difference between invalidity and

vacatur, we do not believe the district court in *Heartland I* used "invalid" to mean "vacated" when it reasoned that HHS's procedural "failure ... to respond to [comments] ... render[ed] the adoption of the regulations arbitrary and capricious and, consequently, invalid." *Heartland I*, slip op. at 23–24.

Heartland points out that in the *Georgetown* case the Supreme Court used "invalidated" as a synonym for "vacated," 488 U.S. at 206–07, and cites *Action on Smoking & Health v. Civil Aeronautics Board*, 713 F.2d 795 (1983) (*ASH*), because there we stated, "To 'vacate' ... means '... to make of no authority or validity,'" *id.* at 797. Neither case, however, tells us that when a court declares a rule "invalid" because the agency's explanation is inadequate, as the district court did in *Heartland I*, it necessarily vacates the rule. *Allied-Signal*, which came after both cases but before *Heartland I*, clearly indicates it does not.

In *Georgetown* the Court equated "invalidated" and "vacated" in discussing a district court's decision setting aside a rule for which the agency had not gone through the notice and comment procedure required by the APA. 488 U.S. at 206–07. Similarly, in *ASH* we were interpreting an eponymous earlier decision, *see* 699 F.2d 1209 (1983), in which we had "clearly and unequivocally *vacated*" a rule, 713 F.2d at 797, because the agency had published a "palpably inadequate" explanation devoid of "reasoning to support its conclusion" and therefore failed to comply with the requirement that it provide a statement of basis and purpose when promulgating a rule, *see* 699 F.2d at 1217; *see also* 713 F.2d at 797–99 & n.2 (when "required explanation of the agency's action is totally absent," vacatur is indicated lest remand invite "wholly *post hoc* rationalization"). Failure to provide the required notice and to invite public comment —

in contrast to the agency's failure here adequately to explain why it chose one approach rather than another for one aspect of an otherwise permissible rule — is a fundamental flaw that "normally" requires vacatur of the rule. *See Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97–98 (D.C. Cir. 2002). So too, when an agency's explanation of the basis and purpose of its rule is so inadequate that the reviewing court cannot evaluate it, the regulation is subject to vacatur under the first *Allied-Signal* factor. *See Ill. Pub.*, 123 F.3d at 693–94. Therefore, neither *Georgetown*, which involved a rule vacated for want of an essential procedural safeguard, nor *ASH*, which involved an agency's failure to offer any reasoned statement of the basis and purpose of its action, suggests a court declaring "invalid" and remanding a rule with a defect that is likely curable necessarily vacates that rule.

In sum, because all indications in *Heartland I* point toward remand without vacatur, we believe the district court left the "invalid" rural location rule in place pending a curative rulemaking. Because Heartland does not argue HHS failed in 1999 to cure the deficiencies identified in *Heartland I*, it follows that in the 2000 adjudication the HCFA was "free to reinstate the original result" based upon that rule. *See Heartland III*, 415 F.3d at 29–30*; see also Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1312 (D.C. Cir. 1991) (describing remand without vacatur as "allow[ing] the [rule] to remain in place until" agency cures defect). Therefore, we do not reach Heartland's various challenges to the HCFA's adjudication of the hospital's application for SCH status from 1992 through 1999, which challenges proceed from the premise that the court in *Heartland I* vacated the 1992 rule.

14

## III. Conclusion

For the foregoing reasons the judgment of the district court is

*Affirmed.*